## LYLES v. ROACH.

1. In 1872 the limitation of actions for the recovery of land held adversely was 20 years, but in 1873 the time was reduced to 10 years. This amendment in the law was not retroactive, and an adverse possession commenced before the act of 1873, and uninterruptedly continued, would not ripen into a right until the expiration of full twenty years.
2. Whether a possession taken in 1872 assumed an adverse character before the act of 1873, or after that act, was a question of fact for the

---

jury; and it depended upon the determination of that fact whether or not the adverse possession had ripened into right by 1887.

3. In actions in *tort*, as well as in actions on contract, the currency of the statute commences when the cause of action accrues;[1] and the limitation in force at the accrual of the right governs the case.

Before KERSHAW, J., Richland, April, 1888.

This was an action by Joseph Lyles against Alice Roach and J. M. Roach, her husband, commenced December 15, 1887. The opinion states the case.

*Mr. R. A. Lynch*, for appellant.

*Mr. Andrew Crawford*, contra.

March 7, 1889. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. In 1872 the defendants took possession of the land in dispute, which at that time belonged to plaintiff's father, and they have held possession ever since. In 1872, at the time this possession was taken by the defendants, the limitations in reference to the recovery of real property was as follows: "No action for such purpose could be maintained, unless it should appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises within twenty years before the commencement of such action." (Section 101 of original Code.) And in section 104, same Code, it was provided: "That in such action the person establishing a legal title to the premises should be presumed to have been in possession thereof within the time required by the law, and the occupation of such premises by any other person should be deemed to

---

[1] This is the general proposition. Of course, it does not apply where the relations or status of the parties are such that it requires something else besides the right to sue to put the statute in motion. For instance, in action by *cestui que trust* against his trustee, the currency of the statute commences from the date of disavowal of trust by the trustee, and not from the time when there was "a plaintiff who can sue and a defendant who can be sued." It would be more accurate to say from the time when there was a plaintiff who *must* sue, if he wishes to arrest the currency of the statute.—REPORTER.

have been under and in subordination to the legal title, unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action."

Construing these sections together, the meaning must have been that to defeat the recovery of the plaintiff in such cases the defendant was required to prove twenty years' *adverse* possession before the commencement of the action. And although the plaintiff could not recover unless it appeared that he or his ancestor, &c., had been in possession within that period, yet proof of title on his part presumed that; which was good, until defendant, although he had been in possession for the 20 years, proved that said possession was *adverse* for said time. Only so much of the possession as was proved to be *adverse* could count as part of the 20 years required.

In November, 1873, the act above was amended by reducing the time to 10 years, instead of 20, with the same provision, however, as to title in plaintiff presuming possession within the 10 years, and the necessity of the defendant proving adverse possession for 10 years before action brought in order to overthrow this presumption. So that, in brief, the law of force before 1873 required the defendant to prove, not simply 20 years' possession, but 20 years' *adverse* possession; and the law since 1873, and which is now of force, requires *adverse* possession of 10 years only before action brought.

Now, as we have stated, the defendants went into possession in 1872, while the old act was of force, holding possession about a year, when the act of 1873 was passed, their possession continuing until up to this time. The plaintiff's father died in 1884, leaving the plaintiff as one of his heirs, entitled to one-fourth of his estate; and the action below was brought under the above state of facts to recover said one-fourth of the land. His honor, the Circuit Judge, held that the act of 1873 applied to the case, and he charged that if defendants had proved to the satisfaction of the jury adverse possession for ten years before the action was brought, they were entitled to the verdict. The verdict was for the defendants.

The question in the appeal is, was his honor correct in his

ruling above? Or should he have held that the old act applied?
Plaintiff's father died in 1884, and defendants having been in
possession since 1873, and more than 10 years intervening
between 1873 and 1884, if that possession was adverse, and the
act of 1873 applied, defendants were certainly entitled to the
verdict. But if the old act, to wit, the act of 1870, applied,
then defendants not having been in possession, either adverse or
permissive, for 20 years, plaintiff was entitled to the verdict. So
that the only question in the case, as we have already stated, is,
should the act of 1870 or the act of 1873 be held to apply?
There is no doubt but that the act of 1873 repealed the act of
1870, and that in all cases arising since the act of 1873, only 10
years' adverse possession are required to defeat plaintiff's
recovery—certainly where the possession has been taken since
the act, and has been held adversely since for the 10 years.

But the act of 1873 was not retroactive. There is nothing in
its terms which carries it back of its date, nor is there a neces-
sary implication from the language used to that effect. It was
clearly prospective, and had reference entirely to causes of action
which might arise in the future after its passage, as to which the
old act of 1870 was, of course, thereby repealed. Now, such
being the fact, the true point upon which the question turned,
whether the act of 1870 or 1873 applied, was: when did the
cause of action accrue, or rather, when did the defendants com-
mence to hold adversely, because no action accrued until *adverse*
holding began. It is conceded that defendants went into posses-
sion before 1873, to wit, in 1872. But we do not understand
that it is conceded that defendants' possession commenced ad-
versely in 1872, and has so continued since. If so, his honor
was in error in applying the act of 1873 to the case; because,
then, the cause of action would have accrued before 1873, and
while the act of 1870 was of force, in which event twenty years'
possession before suit brought would have been required.

Now, at what time adverse possession commenced, and when
thereby a cause of action accrued, was, and should have been, held
a question of fact for the jury, with instructions from the court
as matter of law, that if they found that such adverse possession
began before the act of 1873, *supra*, then the plaintiff was enti-

tled to recover, unless the testimony satisfied them of twenty years' adverse possession in defendants before action brought. And if such possession *began* after the act of 1873, then 10 years would be sufficient.   We think, therefore, that the charge of his honor was erroneous in assuming that adverse possession had commenced since 1873, and therefore in charging that 10 years would entitle the defendants to the verdict.

It may be stated generally, and with reference to all statutes of limitations, both as to actions arising on contracts and also upon torts, trespasses, &c., that the currency of the statute commences when the cause of action accrues, or, as Judge Evans said in *Bugg* v. *Summer*: "Whenever there is a plaintiff who can sue, and a defendant who can be sued, the statute begins to run.   A right of action has accrued."   *Bugg* v. *Summer*, 1 McMull., 333 ; and the limitation in force at the accrual of the right is the limitation which must govern.   This theory is sustained in our recent case of *Nichols* v. *Briggs* (18 S. C., 478), where the limitation of force at the time the note fell due was applied, and not the one when the action was brought.   And this was not because the subject matter rested on contract, but because the accrual of a right of action set the statute in motion, and this was the case whether the cause of action was assumpsit, trespass, trover, debt, or whatever else it might be.

Respondents' counsel contends ingeniously that title founded upon adverse possession is nothing but a right or title growing out of a continuous daily trespass submitted to for the statutory period, and if the defendants can show such daily continuous trespass since the act of 1873, submitted to for 10 years by the plaintiff, then they are protected, their trespass having ripened into a right.   But it will be observed that the action of the plaintiff is for the recovery of the possession of the land, and the right of action for such possession accrued first when he was illegally deprived of possession, and if that deprivation has continued, there has not been a second cause created thereby, but the first has continued, and the currency of the statute being set in motion by the accrual of the first, the time must be estimated from that period and according to the provisions of the act of assembly then of force.

We think it was error for the judge to hold, as matter of law, in this case, that the act of 1873, limiting adverse possession to 10 years, applied, and should govern. He should have ruled that whether said act or the previous act of 20 years applied, depended upon the question of fact, whether the adverse possession set up began before or after the said act of 1873—and this question he should have left to the jury, with such instructions as the fact found might require.

It is the judgment of this court, that the judgment of the Circuit Court be reversed.